KERSTIN ARUSHA, State Bar #182624
(kerstina@lawfoundation.org)
MONA MOTWANI, State Bar #239677
(monam@lawfoundation.org)
FAIR HOUSING LAW PROJECT
111 West St. John Street, Suite 315
San Jose, California 95113
Telephone: (408) 280-2412
Fax: (408) 293-0106

Attorneys for Plaintiffs Bree and Micah Kuyat

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Jose)

C07 05691 PVT

BREE KUYAT and MICAH KUYAT )
    Plaintiffs, )
     )
    v. ) COMPLAINT FOR DECLARATORY,
     ) INJUNCTIVE AND MONETARY
USAA INSURANCE AGENCY, Inc. dba ) RELIEF and JURY DEMAND
USAA INSURANCE AGENCY, Inc. of )
Texas )
     )
    Defendant. )

## I. INTRODUCTION

1.    In this action, Plaintiff Bree Kuyat, a licensed child care provider, and her husband, Plaintiff Micah Kuyat, seek injunctive, declaratory, and monetary relief against Defendant for its refusal to insure houses used as day care homes. Defendant's actions constitute discrimination based on familial status, gender, and source of income and also violate California statutes protecting licensed day care homes.

1

## II. JURISDICTION AND VENUE

2. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiffs' state-law claims because those claims are related to Plaintiffs' federal claims and arise out of a common nucleus of related facts. Plaintiffs' state-law claims are related to Plaintiffs' federal claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

3. This Court has jurisdiction over Plaintiffs' action for declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by 28 U.S.C. § 2203 and Rule 65 of the Federal Rules of Civil Procedure.

4. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) in that the unlawful conduct that gives rise to these claims occurred within the Northern District of California.

## III. INTRADISTRICT ASSIGNMENT

5. Intradistrict assignment in San Jose is proper because the unlawful conduct that gives rise to these claims occurred in Santa Clara County.

## IV. PARTIES

6. Plaintiff Bree Kuyat is a 24-year-old woman who is licensed to operate a family day care home for six or fewer children. Plaintiff Micah Kuyat, her husband, is a

2

COMPLAINT

23-year-old man. Mr. and Mrs. Kuyat reside with their two minor children, Mikayla and Jayse Kuyat. Bree Kuyat's principal source of income is the revenue generated by the operation of her day care home. The Kuyats rely on the income generated by the operation of Bree Kuyat's in-home licensed day care to provide for their family.

7. Plaintiff is informed and believes that at all times relevant times, Defendant, USAA Insurance Agency, Inc. (hereinafter "USAA"), was and is a Texas corporation, is registered as a California foreign corporation and regularly conducts business activity with Santa Clara County residents.

8. At all relevant times, Defendant was engaged in the business of providing insurance—including, but not limited to, homeowners' and renters' insurance—to members of the public.

## V. LEGAL BACKGROUND

9. California has a licensing system for operators of family day care homes, codified at Health and Safety Code § 1597 *et al*. Operators of family day care homes provide child care in their own homes for up to 14 children.

10. The legislature enacted protections to operators of day care homes because "It is the intent of the Legislature that family day care homes for children should be situated in normal residential surroundings so as to give children the home environment which is conducive to healthy and safe development. It is the public policy of this state to provide children in a family day care home the same home environment as provided in a traditional home setting. The Legislature declares this policy to be of statewide concern

with the purpose of occupying the field to the exclusion of municipal zoning, building and fire codes and regulations governing the use or occupancy of family day care homes for children, except as specifically provided for in this chapter, and to prohibit any restrictions relating to the use of single-family residences for family day care homes for children except as provided by this chapter." California Health & Safety Code § 1597.40.

11. California specifically protects day care home operators from losing insurance due to their profession. "The arbitrary refusal to renew a policy of homeowners' insurance solely on the basis that the policyholder has a license to operate a family day care home at the insured location shall subject the insurer to administrative sanctions . . . ." California Insurance Code § 676.1.

12. The federal Fair Housing Amendments Act prohibits discrimination in the provision of insurance of a dwelling. This includes, "Refusing to provide . . . property or hazard insurance for dwelling or providing such services or insurance differently because of" sex or familial status. 24 C.F.R. § 100.70(d)(4).

13. Under the Fair Housing Amendments Act, discrimination includes imposition of a neutral rule that has a disproportionate impact on a protected class without a legitimate business necessity.

14. California's Fair Employment and Housing Act forbids, in addition to discrimination prohibited by the federal law, discrimination based on source of income. Case law established that discrimination against day care home operators can constitute source of income discrimination.

15. California's Unruh Act, Civil Code § 51, prohibits occupational discrimination by a business, which includes insurance companies.

## VI. FACTS

### A. EVENTS

16. In October 2005, the Kuyats rented a home located at 18297 Shadowbrook Way in Morgan Hill, California (hereinafter "the property"), owned by Craig and Cathleen Parshall and managed by Live Oak Property Management.

17. Live Oak Property Management operates out of Morgan Hill, California. Suzanne Leech from Live Oak Property Management was responsible for managing the property on behalf of the Parshalls.

18. At all times relevant to this complaint, the Parshalls had an insurance policy on the property through Defendant USAA Insurance Agency.

19. In the spring of 2006, the Mr. and Ms. Kuyat's daughter was 18 months old and Ms. Kuyat was pregnant with their second child. At that time, Ms. Kuyat was employed at Starbucks. In order to best care for their family, the Kuyats decided that Ms. Kuyat would leave her employment at Starbucks and begin working as a licensed in-home day care operator so that she could care for their children and continue to have a source of income.

20. The Kuyats began taking the steps needed to obtain a license from the California Department of Social Services to operate a small family day care. One of those steps is notification to the landlord.

21. In or about February 2006, the Kuyats spoke with Ms. Leech and asked permission to operate an in-home licensed day care from the property.

22. In or about February 2006, Ms. Leech verbally gave Mrs. Kuyat permission to operate the day care from the property.

23. On May 2, 2006, Ms. Leech signed a form authorizing the Kuyats to operate an in-home licensed day care from the property.

24. In or about May 2006, at the request of Ms. Leech, Ms. Kuyat contacted her insurance company, State Farm, and added the property owners, Craig and Kathy Parshall, to her own insurance policy.

25. On May 19, 2006, Ms. Kuyat left her employment at Starbucks. She began babysitting two children on a daily basis at her home. Her babysitting was in anticipation of getting a license from the California Department of Social Services and operating an in-home licensed day care.

26. At her employment at Starbucks, Ms. Kuyat made $11.15 per hour plus $40 weekly in tips, or approximately $1,300 per month.

27. Ms. Kuyat purchased supplies in anticipation of opening her day care.

28. In or about July 2006, Defendant informed Cathleen Parshall that Defendant would discontinue insuring the property if a day care home was operated on the property, regardless of whether the tenants had insurance or a day care license.

29. Defendant confirmed this conversation by a letter to the Parshalls dated July 18, 2006.

30. Ms. Kuyat received a letter from Live Oak Property Management dated July 18, 2006, which ordered her to immediately cease all day care operations because Defendant had refused to continue insuring the house if there were day care activities.

31. In sending the July 18 letter to Plaintiffs, Live Oak Property Management and the Parshalls were acting under the direction of Defendant.

32. On August 31, 2006, the Kuyat family moved out of the property because they were not allowed to operate an in-home licensed day care.

## B. PROJECT SENTINEL INVESTIGATION

33. In November 2006, the Kuyats contacted Project Sentinel, alleging that Defendant had engaged in discrimination based on operation of a licensed home day care.

34. Project Sentinel conducted a test to verify the Kuyats' allegations. On March 9, 2007, a Project Sentinel tester ("Tester") called Defendant and spoke to an employee of Defendant named Misty whose extension was given as 60784.

35. Tester explained that she owned a home in Watsonville, California, which she rented to tenants. Tester explained that the tenants had inquired about operating an in-home licensed day care from the rental property. Tester asked the Defendant's employee, Misty, if USAA insurance would cover the home if there was such a day care operation.

36. Defendant's employee stated that USAA's insurance would not cover liability of such a business. She explained that the risk was too high to be covered. She

then suggested to Tester that Tester discourage or refuse to allow the operation of the in-home licensed day care.

37. Tester asked if it was possible to obtain adequate coverage from USAA. The USAA representative stated that such coverage was not available from USAA.

### C. DEFENDANT'S DISCRIMINATORY HOUSING PRACTICES

38. Defendant has engaged in a pattern or practice of discrimination against family day care providers, families with children, and women.

39. Defendant's discriminatory housing practices have the purpose or effect of discriminating on the basis of source of income, sex, and familial status.

40. In Santa Clara County, licensed family day care providers include a higher percentage of families with children than the general population and a much higher percentage of women than the general population.

41. Refusing to insure properties occupied as day care homes has a disparate impact on families with children in that more families with children than households without children are prevented from occupying or insuring the property.

42. Refusing to insure properties occupied as day care homes has a disparate impact on women in that more women than men are prevented from occupying or insuring the property.

43. By refusing to insure any property used as a licensed day care, Defendant denied insurance anyone who receives income from the operation of a licensed day care

home because licensed family day care providers are statutorily required to operate from their own homes.

44. Property insurance is a prerequisite for most home loans and for prudent operation of a rental property.

45. The inability to obtain insurance creates a barrier to maintaining a home or using it as rental property.

### D. INJURIES

46. The Kuyats were damaged by Defendant's actions by not being allowed the opportunity to operate an in-home licensed day care from their home, which forced them to move out of the property, causing them to lose a housing opportunity.

47. As a result of Defendant's actions, the Kuyats lost the opportunity to conduct their planned licensed home day care, causing a lost business opportunity and a loss of income that would have been generated.

48. As a result of Defendant's actions, the Kuyats spent time and additional resources in a search for a new housing opportunity. They spent additional money buying day care supplies and paying for moving expenses.

49. As a result of Defendant's actions, Ms. Kuyat lost business income because she had to cancel the enrollment of two children to whom she was set to provide day care; she also lost job opportunities that she turned down in reliance on her plan to operate her own in-home licensed day care.

50. By reason of Defendant's unlawful acts and practices, Plaintiffs Ms. and Mr. Kuyat have suffered humiliation, mental anguish, and emotional distress, and the attendant physical injuries and conditions, as well as violation of their civil rights and loss of a housing and business opportunity and out-of-pocket expenses. Accordingly, they are entitled to compensatory damages.

51. Defendant has engaged in a pattern or practice of discrimination against family day care providers, families with children, women, and those whose income comes from the operation of home day cares. Defendant continues to engage in such a pattern or practice of discrimination so as to constitute a continuing violation.

52. Defendant acted intentionally, maliciously, wantonly, recklessly, and in bad faith as described herein. Accordingly, Plaintiffs are entitled to punitive damages.

53. There exists now an actual controversy between the parties regarding Defendant's duties under the federal and state fair housing and day care laws. Accordingly, Plaintiffs are entitled to declaratory relief.

54. Unless enjoined, Defendant will continue to engage in the unlawful acts and discrimination described above. Plaintiffs have no adequate remedy at law. Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendant's acts and its discrimination against day care providers unless relief is provided by this Court. Accordingly, Plaintiffs are entitled to injunctive relief.

## VII. CAUSES OF ACTION

### A. FIRST CAUSE OF ACTION

*Violation of Fair Housing Amendments Act, 42 U.S.C. §3601 et seq.*

55. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 54 above.

56. Defendant injured Plaintiffs in violation of the Fair Housing Amendments Act (FHAA) by discriminating or otherwise making unavailable a dwelling because of familial status and sex, in violation of 42 U.S.C. § 3604(a).

57. As a proximate result of Defendant's conduct, Plaintiffs have been damaged, as set forth above.

### B. SECOND CAUSE OF ACTION

*Violation of the California Fair Employment and Housing Act Cal. Gov't Code §12955*

58. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 57 above.

59. Defendant has injured Plaintiffs in violation of the California Fair Employment and Housing Act by:

A. Discriminating, making statements that indicated a preference, limitation, or discrimination based on familial status, source of income, and gender, or otherwise making unavailable dwellings because of familial status, source of income, and

11

gender, in violation of Cal. Gov't Code §§ 12955(a), 12955(b), 12955(c) and 12955(k); and

B.  Acting in a manner that has the effect of discriminating based on familial status, gender, and source of income, where such actions were not necessary to the operation of Defendant's business and did not effectively carry out a significant business purpose, in violation of Cal. Gov't Code § 12955.8.

60.  As a proximate result of Defendant's conduct, Plaintiffs have been damaged, as set forth above.

### C.  THIRD CAUSE OF ACTION

*Violation of the California Unruh Civil Rights Act, Cal. Civil Code § 51.*

61.  Plaintiffs reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 60 above.

62.  In doing the things herein alleged, Defendant has violated Plaintiff's right to fair housing under the Unruh Civil Rights Act, Cal. Civil Code § 51, in that Defendant discriminated based on profession, source of income, and an arbitrary characteristic—namely, the operation of a family day care—in the operation of Defendant's business establishment.

63.  The conduct of Defendant alleged herein constitutes a denial of full and equal access to a business establishment to Plaintiffs within the meaning of California Civil Code § 51 et seq.

64. As a proximate cause of Defendant's conduct, Plaintiffs have been damaged, as set forth above.

### D. FOURTH CAUSE OF ACTION

*Violation of California Unfair Business Practices Act, Bus. & Prof. Code § 17200*

65. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 64 above.

66. In acting as herein alleged, Defendant has engaged in a pattern or practice of unlawful discrimination against day care providers in the issuing of insurance, through its business establishment, and therefore has engaged in acts of unfair competition as the same is defined in § 17200 of the California Business and Professions Code.

67. Defendant's actions were in violation of statutes, including but not limited to California Health and Safety Code § 1597.40; California Insurance Code §§ 676, 676.1; the California Fair Employment and Housing Act; and the Fair Housing Amendments Act, and thus constitute a per se unlawful business practice.

68. California Health and Safety Code § 1597.40 prohibits indirect and direct restrictions relating to the use of dwellings for family day care homes for children.

69. California Insurance Code § 676 prohibits an insurance company from threatening to cancel an insurance policy on prohibited grounds.

70. California Insurance Code § 676.1 prohibits an insurance company from cancelling or not renewing an insurance policy because of the operation of a day care home at the property.

71. Defendant violated all of these statutes by refusing to insure the property if a day care home was operated at the property and by refusing to insure other properties used as licensed day care homes.

72. As a proximate cause of Defendant's conduct, Plaintiffs have been damaged, as set forth above.

## VIII. RELIEF

Wherefore, Plaintiffs pray for the following relief:

1. That the Court enjoin all unlawful practices complained about herein and impose affirmative injunctive relief requiring Defendant, its employees, and all persons acting in concert or participating with them, to take affirmative action to provide home insurance regardless of operation of family day care facilities, including providing training regarding day care protection and fair housing laws for all employees and agents, and to enjoin Defendant from refusing to insure properties operated as licensed home family day care homes.

2. That the Court declare that Defendant violated the provisions of applicable federal and state discrimination and day care protection laws;

3. That the Court award compensatory and punitive damages to Plaintiffs according to proof;

4. That the Court order restitution, including disgorgement of profits obtained from engaging in an unlawful business practice;

5. That the Court grant costs of suit, including reasonable attorney's fees; and

6. That the Court grant all such other relief as the Court deems just.

Dated: November 8, 2007

_____
KERSTIN ARUSHA
FAIR HOUSING LAW PROJECT

COMPLAINT

## VIII. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby request a trial by jury as to each and every claim for which they are so entitled.

Dated: November 8, 2007

FAIR HOUSING LAW PROJECT

Kerstin Arusha
Attorney for Plaintiffs